In re Rosetta ARMSTRONG,

In re Richard Rochester and Sharlene Rochester,

In re Angelo Manasan and Jean Manasan,

In re Steve Springer,

In re Karen S. Wilson and Todd W. Wilson,

In re Robbie B. Pittman and Cleo Margalene Pittman,

In re William Braggs,

In re Effie Marjean Edgar, Debtors.

Nos. 03–35406–HDH–13, 03–32184–BJH–13, 03–34099–BJH–13, 03–33113–BJH–13, 03–38167–BJH–13, 03–34137–SAF–13, 03–34189–SAF–13, 03–36770–SAF–13.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Jan. 18, 2005.

98

Molly W. Bartholow, Bartholow & Bartholow, Dallas, TX, for Rosetta Armstrong, Richard and Sharlene Rochester, Angelo and Jean Manasan, Steve Springer, Robbie B. and Cleo Margalene Pittman, and William Braggs, Debtors.

Cynthia A. Spencer, Law Office of Cynthia A. Spencer, Garland, TX, for Karen S. and Todd W. Wilson, Debtors.

Gary Armstrong, Armstrong Law Firm, Dallas, TX, for Effie Marjean Edgar, Debtor.

Thomas Dwain Powers, Areya Pronske, Office of the Standing Chapter 13 Trustee, Irving, TX, for Thomas Powers, Standing Chapter 13 Trustee.

Mark Stromberg, Stromberg & Associates, P.C., Dallas, TX, for eCast Settlement Corporation.

### MEMORANDUM OPINION AND ORDER ON CONFIRMATION OR DISMISSAL OF CHAPTER 13 CASES ARISING FROM OBJECTIONS TO CLAIMS

STEVEN A. FELSENTHAL, Chief Judge, BARBARA J. HOUSER, HARLIN D. HALE, Bankruptcy Judges.

Thomas Powers, the Standing Chapter 13 Trustee, objects to confirmation of several Chapter 13 plans, contending that the debtors have not proposed the plans in good faith. In two of the cases, the Trustee moves to dismiss for failure to confirm a plan. Each of the debtors have filed blanket objections to unsecured claims for "lack of documentation." The Trustee contends that the debtors do not prosecute plans in good faith when they file blanket objections to all or most unsecured claims. The court conducted evidentiary hearings on May 11, May 20, June 15, June 16 and July 12, 2004. To understand the claims transfer process, the court held an additional evidentiary hearing involving the transfer of claims to eCast Settlement Corporation ("eCast") on October 29, 2004.

The confirmation of Chapter 13 plans and the allowance of claims against bankruptcy estates constitute core matters, 28 U.S.C. § 157(b)(2)(B) and (L), over which the court has jurisdiction to enter final orders. 28 U.S.C. §§ 151 and 1334. This memorandum opinion constitutes the court's findings of fact and conclusions of law. Bankruptcy Rules 7052 and 9014.

After consultation with the bankruptcy judges of the Northern District of Texas, this memorandum opinion and order is jointly entered by the bankruptcy judges of the Dallas Division of the Northern District of Texas in each of the judge's above-styled cases.

## I. Background Facts

The court summarizes the facts of two of the cases. The facts from these cases typify the facts of the contested confirmation and dismissal hearings. For that reason, that court does not state the facts of the other cases.,

In the case of Effie Marjean Edgar, case no. 03–36770–SAF–13, Edgar proposed a Chapter 13 plan that would pay a 16% dividend to her unsecured creditors. Edgar objected to all filed proofs of unsecured claims, contending that the creditors failed to file supporting documentation pursuant to Bankruptcy Rule 3001.

Several proofs of claims stated the precise amount of debt scheduled by Edgar. Others stated virtually the same amount of debt as scheduled by Edgar. Edgar held several of the subject credit cards for years. She regularly reviewed her statements. Edgar testified that she did not question the propriety of the proofs of claims for those creditors nor did she instruct her attorney to object to the claims. She testified that she had no reason to question the claims.

Several of her creditors sold their claims to eCast. Edgar had not heard of eCast before filing her bankruptcy petition. Edgar's creditors did not inform her that they had transferred their claims to eCast. At the time she filed her objection, Edgar argues that eCast did not submit documentation of the transfer of claims nor of its right to assert the claims. eCast has subsequently filed notices of transfer of claims.

eCast purchases credit card portfolios of thousands of credit card accounts. eCast asserts that requiring more documentation than it has provided would pose an unreasonable burden. Edward Benison, a representative from eCast, testified that eCast gets all of its information on the credit card accounts that it purchases in electronic format from the credit card companies, along with some statements and supporting documents in portable document format. As part of the purchase, the seller also agrees to provide eCast additional documents that it has retained on that account, but eCast must pay a fee for retrieval of this information. Further, Benison testified that it would be impossible to attach all account statements to the proofs of claim they file, because records are only kept for five to ten years and then destroyed.

eCast and other credit card creditors argue that they should only be required to provide a short summary of the balance due on the account filed with the proof of claim in each case. Otherwise, they argue, they would then be subjected to searching for, reproducing, compiling, and filing possibly hundreds of pages of attachments to each and every claim, or to making a determination that the documents are no longer available and preparing a separate statement to that effect. They further argue that if this type of documentation was required, it would be cost prohibitive

for credit card creditors as a class to file proper proofs of claim in Chapter 13 cases, and this would pose an unfair and oppressive burden on claimants. *See* S. Andrew Jurs, *Unsecured Claims and Rule 3001: How Much "Writing" or Supporting Information is Required?*, ABI JOURNAL, Vol. XXIII No. 7, June 2004, at 10 ("Giant consumer lenders merge or purchase the loan portfolios of smaller lenders, and their automated systems are called on to handle a record volume of accounts. At times, the sheer volume and need for standardization as claims are collected creates conflicts with bankruptcy claims practice and procedure.").

In the case of William Braggs, case no. 03–34189–SAF–13, Braggs proposed a plan that did not project a dividend to general unsecured creditors. The plan committed $42,300 to be paid in 60 monthly payments for curing the home mortgage arrearage, paying the value of the secured vehicle loan, paying child support arrearage and paying the Internal Revenue Service. Nevertheless, Braggs objected to all filed proofs of unsecured claims except for the IRS claim.

National Capital Management LLC filed a proof of claim for "money loaned." The debtor objected to the claim because the proof of claim did not document that the claimant owned or held a claim and did not document the amounts owed. Braggs did not schedule a claim in the amount on the proof of claim filed by National Capital Management. Sherman Acquisition LP d/b/a Resurgent Acquisition filed a proof of claim for "Private Label Store." The debtor lodged the same objections to that proof of claim. However, Braggs scheduled two debts in amounts similar to the amount on the proof of claim filed by Sherman Acquisition.

Braggs also objected to proofs of claims filed by Capital One Bank and Dallas County Employees Credit Union for lacking documentation of the amounts owed, the date the debt was incurred, and the total amount claimed due. Although Braggs scheduled a claim owed to Associated Recovery Systems, he testified that he did not know if that represented the debt owed to Capital One Bank. But, if so, Braggs scheduled a greater amount due than the amount claimed on the Capital One proof of claim. No proof of claim was filed by Associated Recovery Systems.

Braggs objected to the proof of claim filed by Midland Mortgage Company. Braggs did not schedule the same arrearage amount as reflected on the proof of claim. Braggs testified that he did not know the amount he was behind, but agreed with Midland on the number of missed payments. Braggs testified that he objected to the proof of claim because it lacked documentation showing the amount owed.

## II. Legal Standards

The Bankruptcy Code provides: "[a] claim ..., proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). "A proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." Bankruptcy Rule 3001(f).

Sections 501 and 502 of the Bankruptcy Code and Bankruptcy Rule 3001 provide that "a party correctly filing a proof of claim is deemed to have established a prima facie case against the debtor's assets." *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir.1988). The claimant will prevail unless a party who objects to the proof of claim produces evidence to rebut the claim. *Id.* Upon

production of this rebuttal evidence, the burden shifts to the claimant to prove its claim by a preponderance of the evidence. *Id.* However, the ultimate burden of proof lies with the party who would bear the burden if the dispute arose outside of the bankruptcy context. *Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

Bankruptcy Rule 3001(a) provides that "a proof of claim shall conform substantially to the appropriate Official Form." Bankruptcy Rule 3001(c) provides that the original or a duplicate of a writing "shall be filed with the proof of claim," if the claim is based on a writing. "If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." Bankruptcy Rule 3001(c).

Official Form 10, for a proof of claim, provides:

> 9. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

The Advisory Committee Note (1991) states:

> The form directs the claimant to attach documents to support the claim or, if voluminous, a summary of such documents. These include any security agreement (if not included in the writing on which the claim is founded), and evidence of perfection of any security interest. *See* Committee Note to Rule 3001(d) concerning satisfactory evidence of perfection. If the claim includes prepetition interest or other charges such as attorney fees, a statement giving a

detailed breakdown of the elements of the claim is required.

For the most part, the unsecured creditors in these cases have not complied with the requirements of Official Form 10 to attach supporting documents or, if voluminous, a summary. As a result, the debtors contend that the proofs of claim do not comply with Bankruptcy Rule 3001(a) and (c) and therefore do not constitute prima facie evidence of the validity and amount of the claim under Bankruptcy Rule 3001(f). To prevent the claim from nevertheless being allowed, the debtors lodge their objections as provided by § 502(a).

## III. Issues

1. What is required for a credit card creditor's claim to be considered *prima facie* valid, and should claims that do not meet this standard be disallowed?

2. For creditors to whom credit card loans have been transferred, what documentation is required with their proof of claim to evidence their right to collect the debt?

3. Do the debtors propose their plans in good faith by objecting to unsecured claims for failure to comply with Bankruptcy Rule 3001 by not providing the documentation required by the rule and by Official Form 10?

## IV. Analysis

### A. Proof of Claim Requirements

■ A proof of claim to be sufficient to establish *prima facie* validity of the debt must meet the requirements of Bankruptcy Rule 3001 and Official Form 10. Bankruptcy Rule 3001 requires that a proof of claim: (1) be in writing; (2) make demand on the debtor's estate; (3) express the intent to hold the debtor liable for the debt; (4) be properly filed; and (5) be

based upon facts which would allow, as a matter of equity, to have the document accepted as a proof of claim. *First National Bank of Fayetteville, Arkansas v. Circle J Dairy, Inc. (In re Circle J Dairy, Inc.)*, 112 B.R. 297, 299–300 (W.D.Ark. 1989) (citing *In re Scholz*, 57 B.R. 259 (Bankr.N.D.Ohio 1986)). When a claim is based on a writing, a copy of the writing shall be filed with the proof of claim, and if the documents are not available, the creditor must attach a statement that explains their unavailability. Bankruptcy Rule 3001(c). A "properly filed" proof of claim, as proscribed by the Judicial Conference in Official Form 10, consists of "(1) a creditor's name and address, (2) basis for claim, (3) date debt incurred, (4) amount of claim, (5) classification of claim, and (6) supporting documents." *In re Hughes*, 313 B.R. 205, 209 (Bankr.E.D.Mich.2004) (quoting *In re Dow Corning Corp.*, 250 B.R. 298, 321 (Bankr.E.D.Mich.2000)). Official Form 10 states that if the documents are voluminous, the creditor is to attach a summary of the documents, and if the claim includes prepetition interest or other charges such as attorney's fees, a statement giving a detailed breakdown of the elements of the claim is required.

■ A claim based on a credit card agreement, which is required to be in writing, pursuant to the Truth–in–Lending Act, is "based on a writing" and falls under the requirements of Rule 3001(c). *See In re Kemmer*, 315 B.R. 706, 714 (Bankr. E.D.Tenn.2004); *see also In re Cluff*, 313 B.R. 323, 332–334 (Bankr.D.Utah 2004); *In re Henry*, 311 B.R. 813, 817 (Bankr. W.D.Wash.2004). Thus, if a credit card creditor files a proof of claim meeting the standards of Bankruptcy Rule 3001(c) and Official Form 10, then Bankruptcy Rule 3001(f) is triggered, giving the creditor's claim *prima facie* evidence of its validity. At that point:

[T]he burden of going forward with the evidence then shifts to the objecting party to produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, by the presentation of legal arguments based upon the contents of the claim and its supporting documents, or by the presentation of pretrial pleadings, such as a motion for summary judgment, in which evidence is presented to bring the validity of the claim into question. If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence.

*In re Rally Partners, LP*, 306 B.R. 165, 168–169 (Bankr.E.D.Tex.2003) (citations omitted). In cases where the creditor has not met the standards of Bankruptcy Rule 3001 and Official Form 10, the claim is not automatically disallowed; rather, it is deprived of the *prima facie* validity which it could otherwise have obtained. *See In re Los Angeles Int'l Airport Hotel Assoc.*, 196 B.R. 134, 139 (9th Cir. BAP 1996); *see also Rally Partners*, 306 B.R. at 169 (lack of documentation); *In re Cluff*, 313 B.R. at 331 ("Bankruptcy Rule 3001 does not provide substantive grounds for disallowance; it merely determines which party has the burden of proof.").

■ The documentation required by Bankruptcy Rule 3001 and Official Form 10 allows the debtor and the Chapter 13 Trustee to have enough information to fully determine whether or not a valid claim

in the proper amount has been filed. However, lack of proper supporting documentation does not, in and of itself, result in a claim's disallowance; rather, it strips it of any *prima facie* validity, requiring the creditor to offer the supporting documentation to carry its burden of proof in the face of an objection.

■ Benison testified that the written documentation of the credit card agreement, and amendments thereto, and the transaction records involved that make up the written record of the debt owed by the debtor, would amount to hundreds of pages of documents in most cases. *See e.g., In re Kemmer,* 315 B.R. at 715; *In re Cluff,* 313 B.R. at 336. As a result, requiring each credit card creditor to submit hundreds of pages of supporting documentation with its proof of claim would be unduly burdensome to both the creditor and those that have to review the claims for their validity, including the Chapter 13 Trustee and each debtor's attorney. Because of the voluminous nature of the supporting documentation involved with credit card agreements and the individual transaction records evidencing the debt, Official Form 10 allows for a summary to be attached to the claim.

■ In the case of a credit card creditor, for parties to have sufficient information to determine the basis and accuracy of the claim, a summary statement attached to the claim must include:

(1) the name and account number of the debtor or debtors;

(2) the amount of the debt;

(3) be in the form of a business record or other reliable format; and

(4) if the claim includes charges such as interest, late fees and attorney's fees, the summary must include a statement giving a breakdown of those elements.

*In re Kemmer,* 315 B.R. at 715; *In re Cluff,* 313 B.R. at 335. Most of this information can be found on the monthly credit card statements routinely sent to the debtor prepetition. *See In re Kemmer,* 315 B.R. at 715–716; *In re Cluff,* 313 B.R. at 336–338; *In re Henry,* 311 B.R. at 817–18.

In *Kemmer,* the court found that:

A credit card or consumer credit account creditor that attaches to its proof of claim a copy of the monthly statement generated for the debtor's account or a computer-generated statement of the debtor's account at the time of the bankruptcy filing will be entitled to prima facie status, as long as the statement evidences the debtor's name, account number, account balance as of the date of the bankruptcy filing, previous balance, finance or other charges for that period, and the annual percentage rate charged on the account. It is not necessary, however, for the creditor to attach a copy of the actual account agreement, as the court recognizes that credit card and consumer credit accounts are initially opened by virtue of these account agreements, whereby the creditor may charge interest on any outstanding balance, in addition to late fees, over-the-limit fees, cash advance fees, and the like.

*Kemmer,* 315 B.R. at 716. In *Cluff,* the court found that attaching a copy of the debtor's monthly credit card statement that included the total amount of the accrued debts, the name and account number of the debtor, the minimum payment due, finance charge, interest rate, and any purchases or cash advances during the billing cycle fulfilled these requirements. *In re Cluff,* 313 B.R. at 336. However, a summary that did not provide information regarding the interest rate, late charges, or additional fees that went into the computation of the amount due was not enti-

tled to the *prima facie* presumption of validity. *Id.* at 338. The court in *Henry* also found that the monthly credit card statement provided the necessary information, but found that the creditor must, "at a minimum, provide debtors with . . . (I) a sufficient number of monthly account statements to show how the total amount asserted had been calculated, and (ii) a copy of the agreement authorizing the charges and fees included in the claim." *In re Henry*, 311 B.R. at 817–818.

■ Based on this analysis, the court holds that in the case of a credit card or consumer account creditor, in order for the proof of claim to be given *prima facie* effect, the creditor must attach an account statement containing the debtor's name, account number, the prepetition account balance, interest rate, and a breakdown of the interest charges, finance charges and other fees that make up the balance of the debt, or attach enough monthly statements so that this information can be easily determined. The failure to attach a statement or statements with the required information will result in the loss of the proof of claim's *prima facie* validity; however, it will not result in disallowance of the claim.[1]

## B. Transferred Claims

When Edgar objected to the claims of eCast, eCast had not submitted documentation of the transfer of the claims nor of its right to assert the claims. Edgar stated, in essence, that she may owe the debt, but she did not know the party filing the proof of claim.

■ The transferee has an obligation under Bankruptcy Rule 3001 to document its ownership of the claim. "In the event the claimant is an assignee of a debtor's original creditor, a claimant must attach a signed copy of the assignment and sufficient information to identify the original credit card account. A proof of claim filed with this information satisfies the requirements of Rule 3001." *In re Hughes*, 313 B.R. at 212. In the event duplicate claims are filed, or there is a material discrepancy in the amount scheduled by a debtor and the claim filed by the assignee of a credit card creditor, further documents or an evidentiary hearing may be required. *Id.*

Consequently, when a claim transferee files a proof of claim, it must provide this information in addition to an account statement or statements containing the debtor's name, account number, the prepetition account balance, interest rate, and a breakdown of the interest charges, finance charges and other fees that make up the balance of the debt, or attach enough monthly statements so that this information can be easily determined. The failure to attach the transfer documents and a statement or statements with the required information will result in the loss of the proof of claim's *prima facie* validity; however, it will not result in disallowance of the claim.

The court takes judicial notice of a similar issue regarding the transfer of notes and deeds of trust securing residential loans. The debtor may not recognize or know the transferee entity. The claimant may not have included the note, deed of trust or the assignment documents with the proof of claim. For example, in *Matter of Oliva*, case no. 03–30260–SAF–13, Countrywide Home Loan, Inc., filed a proof of claim. The claim identified the original owner and holder of a deed of trust as Advantage Investors Mortgage

---

1. Although the issue in these cases involves documentation of proofs of claims based on credit card debts, the court would apply a similar requirement to documentation of other claims based on accounts.

Corp. The proof of claim did not attach any documentation establishing Countrywide's ownership of the claim. The debtor objected to the proof of claim. In addition to the documentation, the debtor objected to the amount of the claim. The debtor requested that the claim be disallowed in its entirety and the lien voided. The debtor, however, scheduled Countrywide as the secured creditor on her homestead. In pre-hearing discovery, Countrywide produced the note, deed of trust, assignment documents, and recording information.

■ In the case of claim secured by real property, the transferee must attach a statement or statements with information including the note, the assignment of the note, the deed of trust, and the assignment of the deed of trust, along with recording information. Bankruptcy Rule 3001(d). The failure of the transferee to attach a statement or statements with the required information will result in the loss of the proof of claim's *prima facie* validity; however, it will not result in the disallowance of the claim.

### C. Good Faith

■ The Trustee contends that the plans have not been proposed in good faith because the debtors object to claims for lacking documentation when, in most cases, the debtors have scheduled the claims for the same or similar amounts. To confirm a Chapter 13 plan, the court must find, among other elements, that "the plan has been proposed in good faith." 11 U.S.C. § 1325(a)(3). To determine whether a plan has been proposed in good faith, the court must consider the totality of the circumstances. *Matter of Chaffin,* 816 F.2d 1070, 1073 (5th Cir.1987) (explaining that the court should consider the reasonableness of the proposed repayment plan and whether the plan indicates an attempt to abuse the spirit of the Bankruptcy

Code), *modified on other grounds* 836 F.2d 215 (5th Cir.1988); *Ramirez v. Bracher (In re Ramirez),* 204 F.3d 595, 600–01 (5th Cir.2000) (court considers whether the proposed repayment plan indicates an attempt to abuse the spirit of the Code); *In re Nahat,* 315 B.R. 368, 375 (Bankr.N.D.Tex. 2004) ("in the Fifth Circuit, the 'good faith' test is met if the debtor's plan is truly intended to effect rehabilitation.").

■ Under the totality of the circumstances test, the court considers, among other matters, the schedules and statement of financial affairs filed by the debtor. 11 U.S.C. § 521; Bankruptcy Rules 1007 and 1008. By filing the schedules, the debtor makes a sworn statement or declaration under penalty of perjury to the court of the debtor's understanding of his or her debts. In turn, creditors file their proof of claims, following the requirements discussed above. Just as the debtors must deal honestly with their creditors in this process, *see Morton v. Dreyer (In re Dreyer),* 127 B.R. 587, 593 (Bankr. N.D.Tex.1991), so too must the creditors deal honestly with their debtors. The schedules compel the debtors to forthrightly disclose their assets and liabilities. The proof of claim forms compel the creditors to forthrightly disclose the underlying support for their claims. A debtor who fails to forthrightly disclose his or her assets and liabilities faces objections to discharge by a trustee or creditor. 11 U.S.C. § 727. A creditor who fails to forthrightly disclose the underlying support for a claim faces an objection to the claim by a trustee or the debtor. Each party in interest in a bankruptcy case has the right to insist that the other parties comply with the Bankruptcy Code and the bankruptcy rules.

■ As held above, a proof of claim filed without the requisite documentation lacks *prima facie* validity. Yet, without an

objection, the claim will be allowed. 11 U.S.C. § 502(a). Consequently, a debtor acts in good faith by objecting to a proof of claim that lacks the requisite documentation. The court cannot, therefore, in the abstract, establish per se rules for when a debtor acts in bad faith contrary to the requirement of § 1325(a)(3) by objecting to a proof of claim.

If the creditor fails to respond to the objection, the court would expect the debtor to request that the claim be disallowed. If the creditor supplies the documentation in response to the objection, the court would expect the debtor to withdraw his or her objection. If the creditor does not produce the documentation until a hearing, the creditor would have the burden of proof to establish its claim by a preponderance of the evidence.

■ If the creditor supplies the documentation but the debtor nevertheless pursues the objection, the court would consider the reasons for the debtor's continued prosecution of an objection to the claim. Under the totality of the circumstances test, the court must balance the competing considerations of each particular case. Once the documentation has been provided, if the debtor lacks any other basis for prosecuting an objection to the claim, the court may find that the debtor has acted in bad faith or, in appropriate circumstances, that the debtor's attorney is subject to sanctions.

■ In sum, while the court would not base a determination of bad faith on a debtor's legitimate objections to claims, the court recognizes that abuse of the claims process may be an element in a pattern of conduct to consider under § 1325(a)(3). While a debtor may require a creditor to comply with the Bankruptcy Code and Rules, a debtor's over-reliance on non-substantive objections to claims may be evidence of abuse of the bankrupt-

cy process. The court would consider the circumstances of objections to claims in the totality of the circumstances of each case. In doing so, the court will consider, among other factors, discrepancies between a debtor's objections to claims and his or her schedules, pursuit of documentation objections after cure by creditors, use of blanket objections, and frequent use of technical objections to avoid payment of undisputed scheduled debts.

## D. Rule 9011

■ The Chapter 13 Trustee claims that the blanket objections filed by counsel for a debtor, especially when the debtor does not disagree with the amount of the proof of claim, constitute Bankruptcy Rule 9011 violations. Fed. R. Bankr.P. 9011.

Bankruptcy Rule 9011 provides in relevant part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reason-

able opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

The Trustee's basic argument is that these objections are being filed for an improper purpose and that an investigation by the debtor's attorney before filing the objection would reveal that the debtor really does not oppose the claim. The debtors' objections present issues in an evolving area of the law which debtors' counsel is testing for the benefit of their clients. Therefore, Bankruptcy Rule 9011 sanctions are not warranted at this time.

The court observes, however, that if a debtor objected to a proof of claim for lack of documentation and, in response, the claimant supplied the documentation, the court would consider imposing sanctions on an attorney who continued to prosecute an objection if the debtor lacked any other basis to challenge the claim.

## V. Conclusion

A proof of claim that lacks the documentation required by this memorandum opinion shall not enjoy the *prima facie* assumption of validity accorded by Bankruptcy Rule 3001(f). In response to an objection to the claim, the claimant would have to establish the claim by a preponderance of the evidence. A debtor acts in good faith by objecting to a proof of claim that lacks the requisite documentation.

Beyond that, the court will weigh the circumstances of objections to claims as outlined in this memorandum opinion under the totality of the circumstances test to determine whether a Chapter 13 debtor proposes and prosecutes a Chapter 13 plan in good faith.

## VI. Order

Based on the foregoing memorandum opinion,

**IT IS ORDERED** that Thomas Power, the Standing Chapter 13 Trustee, shall notice a status conference on confirmation and the claims objections, or the motion to dismiss, as appropriate to each of the above-styled cases. Prior to the conference, the parties shall engage in a pre-hearing conference to resolve outstanding issues consistent with this court's memorandum opinion.

Signed this 18th day of January, 2005.

%/s/ Steven A. Felsenthal
Chief United States Bankruptcy Judge

/s/ Barbara J. Houser
United States Bankruptcy Judge

/s/ Harlin D. Hale
United States Bankruptcy Judge